UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEAN REARDON,

                                 Petitioner,

                -vs-                                           03-CV-0199C

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                                 Respondent.
_____

Plaintiff Dean Reardon initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability ("SSDI") benefits. The Commissioner has filed a motion for judgment on the pleadings (Item 9), and the plaintiff has cross-moved for the same relief, pursuant to Fed. R. Civ. P. 12(c). Item 11. For the following reasons, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

**BACKGROUND**

Plaintiff was born on March 9, 1940 (T. 56).[1] He applied for SSDI benefits on January 22, 1996, with an alleged disability onset date of February 25, 1995 (T. 56). Plaintiff alleges disability based on chronic gastroduodenitis, allergic rhinitis, and chronic sinusitis. *Id.* His application was denied initially on May 13, 1996 (T. 60-62), and upon reconsideration on June 19, 1996 (T. 75-77). Plaintiff requested an administrative hearing,

---

[1] References preceded by "T." are to page numbers of the administrative record filed by defendant as part of the answer to the complaint.

which was held on May 1, 1997 before Administrative Law Judge ("ALJ") Richard D. Hines (T. 350-76). In a decision dated June 16, 1997, the ALJ determined that plaintiff was not disabled (T. 296-300).

Plaintiff requested review of the ALJ's decision (T. 303), and the Appeals Council granted the request (T. 308-11). The ALJ held supplemental hearings on November 17, 1999 (T. 377-97) and March 28, 2000 (T. 32-43). In a decision dated May 23, 2000, the ALJ found plaintiff not disabled and not entitled to SSDI benefits (T. 17-22).

The ALJ's decision became the Commissioner's final determination on January 31, 2003, when the Appeals Council declined plaintiff's request for review (T. 7-8). On March 13, 2003, plaintiff commenced this action seeking judicial review of the Commissioner's final determination (Item 1). The Commissioner filed an answer on June 13, 2003 (Item 3), and moved for judgment on the pleadings on May 4, 2004 (Item 9). Plaintiff filed a cross-motion for judgment on the pleadings on June 2, 2004 (Item 11) on the ground that the decision is not supported by substantial evidence.

## DISCUSSION

### I. Scope of Judicial Review

The Social Security Act states that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see*

*also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson,* 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews,* 418 F.Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Sec'y of Health and Human Servs.,* 633 F.Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,* 167 F.3d at 773.

## II.     Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of

an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity, based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids").  *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform.  *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since February 25, 1995, the alleged onset date of his disability (T. 18).  Plaintiff met the disability insured status requirements as of the alleged onset date and continued to meet them through September 30, 1996 (T. 17-18).  Plaintiff has a high school education and was formerly employed as a police officer, security guard, and sales clerk (T. 18).  In reviewing plaintiff's medical records, the ALJ noted that plaintiff has a history of gastrointestinal problems, peptic ulcer disease, enlarged prostate, mild emphysema, chronic obstructive pulmonary disease, and sinusitis.  He underwent a

surgical resection of his stomach in 1982, leaving him with approximately 30 percent of his stomach capacity and requiring him to eat several small meals per day. *Id.* Accordingly, the ALJ found that plaintiff suffers from "severe" impairments for purposes of the regulations. The ALJ further concluded, however, that plaintiff's impairments, individually or in combination, did not meet or equal the requirements of the Listings (T. 19). Proceeding to the fourth step of the sequential evaluation process, the ALJ found plaintiff able to meet the exertional demands of light work with certain non-exertional limitations (T. 20). Additionally, the ALJ found "little in the way of objective clinical or laboratory evidence to substantiate the alleged severity" of plaintiff's impairments (T. 20). The ALJ noted that plaintiff's lifestyle did not appear to be significantly restricted and that plaintiff hunted and fished, went boating, and traveled (T. 19). The ALJ found that plaintiff could perform his past relevant work as a sales representative, or other positions such as security guard or surveillance monitor (T. 20-21). Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act.

The Commissioner contends that the ALJ's findings are supported by substantial evidence. Plaintiff contends that the ALJ misapplied the established legal and regulatory standards in failing to give the proper weight to the opinion of plaintiff's treating physician and in failing to credit his testimony regarding pain.

### III. Treating Physician's Opinion

Plaintiff contends that the ALJ failed to give appropriate weight to the opinion of his treating physician, Dr. Hallasey. In a report dated April 28, 1997, Dr. Hallasey recounted plaintiff's medical history, starting with his stomach resection in 1982. Plaintiff "must

consume at least six to seven small meals per day to meet his caloric needs.  This is very difficult, if not impossible, to do in an efficient work setting." (T. 292).  Dr. Hallasey also stated that plaintiff was currently being treated for a tumor of the pancreas, or gastrinoma, which could be the cause of high levels of gastrin and gastric acid secretions in his stomach (T. 292).   Dr. Hallasey stated that plaintiff suffers from chronic gastritis, gastroduodenitis, and symptoms of chronic spastic bowel syndrome, which are treated with Zantac, Carafate, Simethicone and Levsin (T. 292-93).  The Zantac causes plaintiff mild confusion and somnolence (T. 292).  Plaintiff also has a history of ulcer, H. pylori stomach infection, mild emphysema, and chronic underlying depression, or dysthymia. Dr. Hallasey concluded that plaintiff is "totally disabled" (T. 293).

According to the regulations, medical opinions are "statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [the] impairment(s), including [the] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [any] physical or mental restrictions."  20 C.F.R. §416.927(a)(2).  A conclusory statement that a claimant is "disabled" or "unable to work" is not a medical opinion regarding the nature and severity of an impairment, but an opinion on an issue reserved to the Commissioner.  20 C.F.R. §416.927(e)(1).  Such opinions on issues that would direct the determination or decision of disability are not given any special significance.  20 C.F.R. § 416.927(e)(3).

It is well settled that a treating physician's opinion on the nature and severity of the claimant's impairment is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  *See Rosa v. Callahan,* 168 F.3d 72, 78-79 (2d Cir. 1999); *Clark v. Commissioner,* 143 F.3d 115, 188 (2d Cir.

1998).  The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan, supra; Coyle v. Apfel,* 66 F.Supp.2d 368, 377 (N.D.N.Y. 1999).  The factors which the ALJ must consider in determining the weight given to treating physician's opinions include the length of the treatment relationship, the specialization of the physician, the supportability and consistency of the opinion with the record as a whole, and any other relevant factors.  20 C.F.R. § 416.927(d)(2)-(6).  Thus, the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion rendered by a treating physician, or reject the opinion without providing a good reason for doing so.  *Rosa v. Callahan,* 168 F.3d at 79; *Coyle v. Apfel,* 66 F.Supp.2d at 377.

Here, Dr. Hallasey's opinion was rendered April 28, 1997, well after plaintiff's disability insured status expired in September 1996.  Plaintiff argues that the opinion was retrospective, as Dr. Hallasey recounted plaintiff's medical history and had been plaintiff's treating physician since 1993.  Plaintiff contends that Dr. Hallasey's report "is the major source of information in the file" and thus should have been given controlling weight. Item 11, at 5.  The Commissioner argues that Dr. Hallasey did not opine that plaintiff was disabled prior to September 1996, and that the ALJ properly declined to give the Hallasey report controlling weight.

The ALJ considered Dr. Hallasey's report, and found that "there are no findings or symptoms upon which Dr. Hallasey's conclusion" of total disability could be based (T. 20). Dr. Hallasey recounted plaintiff's medical history, including some problems which were resolved prior to September 1996: namely, the marginal ulcer and the H. pylori infection (T. 270). Additionally, Dr. Hallasey based his finding of total disability on plaintiff's mild emphysema and dysthymia. The medical records prior to September 1996 indicate no treatment for emphysema or dysthymia. There is no indication in the medical records that the possible gastrinoma, or pancreatic tumor, caused a disabling condition. Thus, Dr. Hallasey's conclusion that plaintiff is "totally disabled" is not well supported by the medical evidence.

Additionally, Dr. Hallasey's conclusion of total disability is inconsistent with other substantial evidence in the record. In October 1997, Dr. Hallasey completed a functional assessment of plaintiff and found that plaintiff could lift 10 to 20 pounds and stand or walk up to four hours in the course of an eight-hour workday (T. 232). At the supplemental hearing of March 28, 2000, a medical expert, Dr. Robert Kohn, testified that plaintiff has a high frequency hearing loss and a history of ulcers and anxiety, but his functional abilities are not limited by these diagnoses (T. 38-39). Plaintiff's medical records during the relevant period indicate that plaintiff's chest x-ray was normal in March and September 1995 (T. 11, 214). In April 1996, plaintiff complained of occasional shoulder pain and was diagnosed with rotator cuff tendonitis, relatively asymptomatic (T. 117). In May 1996, plaintiff underwent an esophagogastroduodenoscopy, which indicated a normal esophagus, normal stomach mucous, and no sign of ulcers (T. 138). A CT scan of plaintiff's abdomen in June 1996 indicated a bulkiness in the inferior aspect of the head of

8

the pancreas without obvious obstruction, and a renal cyst (T. 134). An abdominal sonogram on June 15, 1996 indicated no abnormality, other than the small benign renal cyst (T. 174). In July 1996, plaintiff complained of abdominal pain and underwent an upper GI endoscopy with endoscopic retrograde cholangiopancreatography ("ERCP"). This examination revealed an anastomotic ulcer (T. 261). A follow-up endoscopy in September 1996 indicated that the ulcer had healed (T. 269-70). State agency physicians reviewed plaintiff's medical records in May and June 1996 and opined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand, or walk about six hours in an eight-hour workday (T. 68-71, 67-74).

Dr. Hallasey's conclusory statement that plaintiff is "totally disabled" is not a medical opinion regarding the nature and severity of an impairment, but an opinion on an issue reserved to the Commissioner which is not given any special significance. 20 C.F.R. §416.927(e)(1), (3). Additionally, Dr. Hallasey's opinion was not entitled to controlling weight, as it is not well supported by medical findings and inconsistent with other substantial evidence in the record. *See Rosa v. Callahan,* 168 F.3d 72, 78-79 (2d Cir. 1999). The ALJ stated that Dr. Hallasey's conclusion of disability was apparently reached solely on the basis of plaintiff's subjective complaints. Accordingly, the ALJ properly declined to give Dr. Hallasey's opinion controlling weight.

**IV.   Plaintiff's Subjective Complaints**

Plaintiff further argues that the ALJ failed properly to consider his subjective complaints of pain and limitation. The standard for evaluating a claimant's subjective complaints has been incorporated into the Social Security Act as follows:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . .; there must be medical signs and findings . . . which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished . . ., would lead to a conclusion that the individual is under a disability.

42 U.S.C. §423(d)(5)(A).

When an ALJ discredits hearing testimony, he or she must articulate the reasons for doing so "with sufficient specificity to permit intelligible plenary review of the record." *Williams on behalf of Williams v. Bowen,* 859 F.2d 255, 260-61 (2d Cir. 1988). Thus:

> In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's subjective complaints solely on the basis of such personal observations. Rather, in all cases in which pain is alleged, the determination or decision rationale is to contain a thorough discussion and analysis of the objective medical evidence and the nonmedical evidence, including the individual's subjective complaints and the adjudicator's personal observations. The rationale is then to provide a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's capacity to work.

Social Security Ruling 88-13, 1998 WL 236011 (SSA), at *1, *quoted in Thorp v. Apfel,* 1998 WL 683767, at *5 (W.D.N.Y. September 17, 1998). After weighing the objective medical evidence, the claimant's demeanor, other indicia of credibility, as well as any inconsistencies between the medical evidence and a claimant's subjective complaints, the ALJ may decide to disregard the claimant's subjective opinion with respect to the degree of impairment. *See* 29 C.F.R. §404.1529(c)(4); *see also Smith v. Apfel,* 69 F.Supp.2d 370, 379 (N.D.N.Y. 1999).

In this case, the ALJ found that although plaintiff suffered from a variety of ailments, the objective clinical and laboratory evidence did not "substantiate the alleged severity" of plaintiff's impairments (T. 20). The ALJ found that plaintiff's gastrointestinal symptoms

were "stable" and constituted an "annoyance" rather than imposing any exertional limitations. *Id.* Plaintiff complained that Zantac caused him fatigue, but the ALJ noted that plaintiff's lifestyle had not been significantly restricted (T. 19). Plaintiff was able to read, hunt, fish, boat, drive, visit, and travel (T. 19-20).

Here, the ALJ found that plaintiff's subjective complaints were not substantiated by objective clinical or laboratory findings, and that plaintiff had the residual functional capacity to return to his previous work as a sales representative. These findings are consistent with the requirements set forth in the Social Security Act, as interpreted by the pertinent regulations, rulings, and case law with respect to the ALJ's assessment of the plaintiff's credibility. Accordingly, the ALJ did not err in rejecting plaintiff's subjective complaints as a basis for his disability claim, and the decision was based on substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 9) is granted, and plaintiff's cross-motion (Item 11) is denied.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: April   28  , 2005
p:\opinions\03-199.april1305